And we will now hear argument in Batlan v. Bledsoe. Counsel, you may proceed. Good morning. Peter McKittrick on behalf of Michael B. Batlan, who is the Chapter 7 trustee for Jennifer Bledsoe. I stand before the court today as the attorney for the appellant, but also as a bankruptcy trustee myself. I'm very familiar with the issues we're talking about today. And these are issues that are very important to the trustee body generally around the United States. The bankruptcy court in this case granted summary judgment to the defendant in an adversary proceeding for two claims that the trustee brought. One was under section 544 of the bankruptcy code, which incorporates the Oregon Uniform Fraudulent Conveyance Act. And the court found specifically that the trustee had not alleged any allegations of extrinsic fraud and therefore granted summary judgment in favor of the defendant. Secondly, the bankruptcy court granted summary judgment in favor of the defendant on the claims brought under section 548 of the bankruptcy code, which is an analogous code section to the state law regarding fraudulent conveyances. And that decision decided that the case of in-rate BFP from the United States Supreme Court mandates that a conveyance that is made as part of a proceeding in divorce is preclusive as to reasonable equivalent value because it was done pursuant to a divorce decree. I'd like to start by talking about the bankruptcy claims under section 548. As this court is probably aware, the BFP case was a case involving the foreclosure of real estate, where the Supreme Court decided that reasonable estate court foreclosure action occurs with no collusion and under regularly conducted foreclosure procedures. Very few courts around the country who have looked at the BFP case have analogized that case and put it into other contexts in terms of other types of transactions that are immune from this type of claim. For example, locally in the case of Inouye Carter, Judge Paris had a very thoughtful decision where she decided that it doesn't apply to personal property forfeitures. In the case of Inouye Fordue, which is a Sixth Circuit case involving a fraudulent conveyance involving a divorce decree, the Sixth Circuit noted that BFP is a unique case that applies strictly to the foreclosure context, and it's really not applicable in the context of a divorce case or other types of conveyances. But the Fifth Circuit has not agreed with you on this, right? The Fifth Circuit in the Earlwine case did look to BFP for guidance in this area, but if you read the decision carefully, a couple of things stand out. One is that they say that the BFP case is modestly helpful. It doesn't say that it's preclusive or that it mandates a result. Secondly, it cites to the Beesing case, which is the case it relied on, in saying that it does not think that Beesing, as is broad, as the defendant in that case wanted the court to read it, and mandates the result. Most importantly, the court in that case then looked very carefully at the specifics of that divorce situation and found, as a matter of law, that there was reasonably equivalent value given for the transfer of assets to the non-debtor spouse because of the unique nature. Had they decided, as a matter of law, like this court did, that BFP precludes a finding of reasonably equivalent value, other than reasonably equivalent value, they wouldn't have had to go through that factual analysis they went through in finding, as a matter of law, that reasonably equivalent value was given. So, although the Earlwine case does certainly address BFP, I don't think it's preclusive or, in any way, really is the holding of the case. With respect to the state law claims, again, these statutes are very similar. If you read them, they're almost identical. And the bankruptcy court decided that the case of Inouye Greeninger and Inouye Johnson mandated that the trustee allege extrinsic fraud in order to prove that the case should be granted in the trustee's favor. The reason why we believe that is an inaccurate conclusion is that, even though this is a fraudulent invalence case, reasonably equivalent value does not require a finding of fraud. It simply requires a finding that there was less than reasonably equivalent value. It's often referred to as the empty-headed, pure-hearted transaction where the debtor gives something up and doesn't receive something in exchange for value. There's no motive involved. There's no allegation that has to be made of fraud. Counsel, here's the problem that I have with the whole scenario. And that is if, in this case, Ms. Bledsoe behaved very badly, and the divorce court took account of that, her non-cooperative nature, and has what appears to be on paper an unequal property settlement. And yet, now we can undo all of that. We can sort of, her creditors get rewarded, notwithstanding her bad behavior. And the divorce court, what's the divorce court supposed to do? And how do we get to second-guess divorce judgments in Oregon and undo and reward bad behavior by allowing creditors to be compensated? I have a couple of responses to that. First of all, the trustee stands in the shoes of representing unsecured creditors who are not part of that proceeding. If we're rewarding the debtor for her conduct, then I think that's absolutely the appropriate response, is the debtor should not be rewarded for bad conduct during litigation. But it's the creditors who lose out. In a case where the debtor is insolvent, it's not strictly up to the debtor to decide to give away assets either by bad conduct or because they just want out of a messy marriage. But this also goes to the ability of the divorce court to be able to protect its own proceedings. I mean, this is a collateral attack on a divorce proceeding in Oregon. And the divorce court now lacks tools to protect its own proceedings if there's a chance that one of the parties subsequently is going to declare bankruptcy. The response to that is that the parties and the court in a litigated case have the right to determine what is reasonably equivalent or what is fair within the marital community context. The end result of this case was it was a default judgment in favor of the non-debtor spouse. Right. But this is according to Oregon's procedures. There's nothing irregular here about the way in which the divorce court  If there was, then there was a remedy within the Oregon case. There was a remedy within the Oregon court system on direct review. But this is the way that we litigate things. Things have been fully and fairly litigated. And now some third party gets to come in and undo the whole proceeding. I recognize that your clients are in a tough position. And I'm sorry for them. And if there were some evidence that there was collusion between the Bledsos that she said, look, I'm going to misbehave so that you get all the property. I'm going to declare bankruptcy. And then two years from now, we get back together and you give me half the property. Clearly, I would hope that there was a remedy there under one of these sections. But that doesn't appear to be our case. I think if a case is fully litigated and the court makes a determination that the parties are receiving equivalent values in exchange for the property that each one is giving up, even if it doesn't balance. We're not saying it has to balance. What we're saying is that because especially in the divorce context where judgments can be entered by stipulation or by failure to appear because of all the emotions involved in divorce cases, the problem with this case is that we didn't get to that point. The judge did not go through the analysis. Given the bad conduct here, is it fair to the creditors and was there reasonably equivalent value? Was the divorce court supposed to take that into account? No, I think the bankruptcy court is supposed to take that into account in terms of whether there's reasonably equivalent value, which is not a defined term. There's a lot of lead way in what that constitutes. And if this was a fully litigated case where the merits of the property division had been reached, then we wouldn't be here today. But it wasn't. It was a default judgment where the creditors were the ones that ended up losing. A default judgment in the divorce court? Correct. But did the creditors have standing in the divorce court in Oregon? I do not believe they would have. I've never seen a situation where somebody could intervene into a divorce court, which is exactly the problem, which is why the only remedy is for a creditor or a bankruptcy trustee to pursue a claim after the fact because they're not a party to that. Unlike the DFP case where there's notice, there's a foreclosure proceeding, there's opportunity for bidding, all those factors. None of those exist in the confines of the divorce case. Often which happen by stipulation. And there's no collusion. There's no fraud involved. One spouse just wants out. They're fearful for their health. They're fearful for their emotional safety. And they just want out. And they're willing to give up everything they have to get out. I'll go ahead and rest at that unless the panel has any other questions. Thank you, counsel. Thank you. May it please the court, David Mills for Ryan Bledsoe. The trustee's reply brief appears to contend that there's no Oregon Supreme Court case which requires extrinsic fraud to collaterally attack judgment. And that's not accurate. Oregon's Supreme Court has stated, and I'm using the exact language from the 157 opinion, from collateral attacks, all judgments are invulnerable unless they be void. And that's Traveler's Insurance Company v. Steiger, 157, Oregon 143. There's nothing in this case that suggests that this judgment be void. There's no question about the jurisdiction. And if we take a look at the Supreme Court's opinion in Johnson, there's no allegation of extrinsic fraud. I want to make sure that the record's clear that this wasn't a failing on the part of the trustee and not alleging that there was extrinsic fraud. This is a case where there was no evidence of that, and that allegation would have had no support at all on the record. So under 544, the trustee's claim has to fail. I would like to bring to the Court's attention a bankruptcy court decision in New York that was just issued on November 26, 2008. It's In Re Zerbo, 2008, Westlaw, 5050616, where the bankruptcy court in that case adopted the analysis expressly from Flatland v. Blood Cell in saying that because of the DFP analysis, the bankruptcy court should not use 548 to undo state court judgments, and went on to note, too, that while the Blood Cell case dealt with a default judgment, and we discussed that a few moments ago, the Zerbo case said that extends even to situations involving marital settlement agreements. That court recognized that the states have a very important interest in making sure that their judgments involving divorces are maintained, especially in light of the fact that the amendments to Section 548 have extended the look-back period to two years. So if bankruptcy courts were entitled to go ahead and use 548 to undo divorce judgments, those parties involved in those divorce proceedings would have to worry for the next two years after the entry of that judgment that that judgment might be torn apart in a bankruptcy court proceeding. And given the concerns that state courts have in making sure that they can administer divorces, dissolutions of marriage, that has to outweigh the concerns under Section 548. Counsel, you cited, I believe, the Travelers case. I can't find it in your brief. Is this a newly cited case? They raised the – they asserted the argument in their reply brief, Your Honor, that, well, wait a minute, the Greeninger case is just a Oregon court of appeals case, and therefore there's no binding determination if you limit the holding in the situation under Johnson. So I'm raising that issue in argument. I'm more concerned with the mundane rule that we have that either you file a 28-J letter or that you serve on your opponent and the court the citation in advance of oral argument so that we'll be aware of it. I apologize for that, Your Honor. So can you take care of that today? I will, Your Honor. The deputy clerk can give you the form. Both of those cases, Zerbo and Travelers? Yes, both. Zerbo I had very short notice on because it was just beside November 26th of this year, and I just saw that this weekend and doing a lesson. Well, that's why we have 28-J letters. I understand, Your Honor. Thank you. If there are any further questions on that. Nothing further. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee